# EXHIBIT 2

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

No. C 99-03452 CW

ABDULLAH W. MUSTAFAA, aka TERRANCE
MATTHEWS,

**JUDGMENT**

      Petitioner,

v.

A.C. NEWLAND, Warden,

      Respondent.



DOCKETED
SAN FRANCISCO
APR 24 2003
By ___ D. VELASCO ___
No. SF 99 FH 02



FILED
APR 22 2003
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

For the reasons set forth in this Court's Order Denying Petition for Writ of Habeas Corpus

IT IS HEREBY ORDERED AND ADJUDGED:

That Petitioner Abdullah W. Mustafaa's Petition for Writ of Habeas Corpus is DENIED.

Dated:     **APR 22 2003**

CLAUDIA WILKEN
United States District Judge

Copies mailed to parties as
noted on the following page

Entered on Civil Docket ___ 4/23/03

scc

United States District Court
for the
Northern District of California

* * CERTIFICATE OF SERVICE * *

Case Number:4:99-cv-03452

Mustafaa

        vs

Newland

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on _____, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

        Abdullah W. Mustafaa
        CSP-Solano II
        California State Prison-Solano
        E24447
        P.O. Box 4000
        Vacaville, CA  95696

        Glenn Pruden, Esq.
        CA State Attorney General's Office
        455 Golden Gate Ave
        Suite 11000
        San Francisco, CA  94102-7004

                        Richard W. Wieking, Clerk

                        BY: _____
                            Deputy Clerk

FILED

APR 2 2 2003

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDULLAH W. MUSTAFAA, aka TERRANCE MATTHEWS, | No. 99-3452 CW |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| A.C. NEWLAND, Warden, | |
| Respondent. | |

_____/

## INTRODUCTION

Petitioner Abdullah W. Mustafaa, an inmate incarcerated at Solano State Prison (SSP) in Vacaville, California, petitions for a writ of habeas corpus under 28 U.S.C. § 2254 on the grounds that he received ineffective assistance of trial and appellate counsel, and that his due process rights were violated. Respondent A.C. Newland, Warden at SSP, opposes the petition. Mustafaa filed a traverse. The Court requested supplemental briefing, which was filed and considered. The Court DENIES Mustafaa's petition for a writ of habeas corpus on all claims.

## BACKGROUND

Unless otherwise indicated, the following facts are taken from

United States District Court
For the Northern District of California

1  the trial record. On November 13, 1995, Mustafaa was charged with

2  violating California Penal Code §§ 288(a) and 289(j) by committing

3  lewd and lascivious acts upon his twelve year old stepdaughter,

4  Nicole L., and raping her with a foreign object on the night of

5  March 14, 1995.[1]  Resp. Ex. Q, Clerk's Transcript (CT) at 95-99.

6  Mustafaa was first represented by the public defender's office.  In

7  October, 1995, the public defender's office declared that its

8  representation of Mustafaa created a conflict with its

9  representation in an unrelated case.  The court appointed attorney

10  William P. Daley to represent Mustafaa.

11      A.  Amendments to the Information

12      The original information filed against Mustafaa on April 14,

13  1995, charged him with forcible oral copulation on a child under

14  the age of fourteen and rape with a foreign object of a child under

15  the age of fourteen, and included eight prior convictions.  The

16  third charged prior was a burglary on November 23rd, 1979, in

17  Washoe County, Nevada.  The sixth charged prior was a violation of

18  California Penal Code § 211, robbery, on May 22nd, 1984 in San

19  Francisco.  The eighth charged prior was a violation of Penal Code

20  § 212.5(b), attempted robbery, on July 20th, 1989 in Alameda

21  County.  Resp. Ex. Q, CT at 95-99.  Penal Code § 212.5(b) defines

22  robbery of a person while using an automated teller machine as

23  first degree.  Mustafaa was arraigned on this information.  CT at

24  102.

25      On July 24, 1995, the State filed a first amended information,

26

27      [1]As explained below, the original information, filed on April 14, 1995, contained different charges.

28                      2

United States District Court

For the Northern District of California

1  in which the charge of forcible oral copulation on a child under

2  the age of fourteen was changed to lewd acts on a child under the

3  age of fourteen.  The same prior convictions were charged.  CT at

4  113.  Mustafaa was re-arraigned the same day.  CT at 111.

5      On November 13, 1995, the State filed a second amended

6  information, which specified that the foreign object was Mustafaa's

7  finger, omitted the fourth and fifth prior convictions, changing

8  the numbers of the priors accordingly, and changed some of the

9  dates and locations of prior convictions.  The third prior was

10  charged as a burglary in violation of California Penal Code § 459,

11  on October 29, 1979, in Alameda County, rather than on November 23,

12  1979 in Washoe County, Nevada.  The date of the fourth (formerly

13  sixth) prior was changed to April 24, 1984.  The sixth (formerly

14  eighth) was alleged as a violation of Penal Code § 211, rather than

15  § 212.5(b), on May 4, 1989 in San Francisco, rather than on July

16  20, 1989, in Alameda County.  CT at 212-215.  Mustafaa was re-

17  arraigned on November 14, 1995, and he plead "Not Guilty" to all

18  counts and to the prior convictions listed in the information.  CT

19  at 226.

20      On December 11, 1995, at a pretrial motions hearing attended

21  by Mustafaa, the trial court allowed Deputy District Attorney Lauri

22  Weiner to amend the second amended information by interlineation.

23  Resp. Ex. Z, Reporter's Transcript (RT) 12/11/95 at 19-22.  Weiner

24  noted that although the third prior had been correct in the

25  original information, the second amended information incorrectly

26  indicated that the location of the conviction was Alameda County,

27  California, rather than Washoe County, Nevada.  Id.  The record

28

**United States District Court**
For the Northern District of California

1    does not show that Mustafaa was formally re-arraigned after this

2    change was made.

3        On February 29, 1996, after the first trial had ended in a

4    mistrial, a hearing on motions in limine for the second trial was

5    held.  Mustafaa was present.  Resp. Ex. J, Vol. 1, RT 02/29/96 at

6    1.  Another correction was made to the information.  Section 211

7    was crossed out by hand and changed to § 664/212.5.  CT at 215.

8    Penal Code § 664 defines attempt.  Penal Code § 212.5(b), robbery

9    of a person at an automatic teller machine, had been listed in the

10   original and first amended informations.  The judge stated, "I

11   amended it on its face, Ms. Weiner.  But for the record, the sixth

12   prior conviction should show 664/212.5."  RT at 28.  Again, the

13   record does not show that Mustafaa was formally re-arraigned after

14   this change was made.

15       B.  First Trial

16       On December 10, 1995, the first trial on these charges began.

17   On December 21, 1995, the judge received word that during Nicole's

18   testimony, juror Virgil Dahl had seen a man in the audience, later

19   identified as Nicole's grandfather, gesturing to her with his

20   hands.  Resp. Ex. J, Vol. 3, RT 12/21/95, at 1-2.  In a hearing

21   outside the presence of the jury, the judge then questioned Dahl as

22   follows:

23       THE COURT: Okay.  Does that in any way affect your ability as
         a juror here?
24
         MR. DAHL: It's -- I don't know if it makes her less credible
25       or not.

26       THE COURT: Okay.  If it did anything it would tend to make her
         less credible?
27

28                                    4

1    MR. DAHL: Yes.

2  RT at 2.  The judge then asked:

3       THE COURT: If it had an impact on you at all you think it
        would basically tend to have a negative impact on the
4       credibility of the complaining witness?

5       MR. DAHL: It was kind of like he was coaching her.

6  RT at 4.

7      Next to testify was the bailiff, Deputy Mark Lakner, because

8  Lakner had had a note passed to the judge regarding Lakner's

9  observations of a man in the audience.  RT at 4.  The note stated,

10 "Mark wanted me to tell you: 'the man in the front row seems to be

11 coaching the witness - mouthing yes and no.'"    Resp. Ex. I, Vol.

12 2, note filed 12/20/95.  The judge questioned Lakner:

13      THE COURT: The note obviously probably lost something in
        translation, what is it you believe you actually saw?
14
        DEPUTY LAKNER: I saw -- it was a black gentleman sitting
15      center in the front row in the audience who was, from my
        position at my station, looked like he was looking at the
16      witness that was currently answering questions during
        testimony.  And he was mouthing nothing audible, but mouthing
17      what I believe to be words, the word "no" and the words "are
        you sure?"  And I saw that on each of those on two separate
18      occasions [sic].

19 Resp. Ex. J, Vol. 3, RT 12/21/95, at 5-6.

20     The judge stated:

21          This raises two separate questions.  One question is the
        sanctity of the jury itself.  I'm satisfied that Mr. Dahl was
22      truthful when he said that he had not conveyed his observation
        to any other jurors.  We could obviously call the rest of
23      those jurors in and ask them that one by one or as a group if
        they observed anything unusual in the courtroom.
24          On the other hand, Mr. Daley raises another point that
        the Court considered but had set aside for at least a moment
25      'til we got through the other issue, and that is the
        credibility of the witness herself, was her testimony
26      influenced.
            It appears to me that the question would involve, if
27      words were spoken, did it influence the testimony.  That could

28                                      5

1    go certainly to the credibility of a witness.
2         It appears to the Court that that being the very heart of
     this trial, the very sanctity of the trial process itself is
     called into question [sic].
3         It could be that Deputy Lakner would be called to
     testify; it could be that Juror Dahl would be called to
4    testify.

5    RT at 11-12.  Subsequently the defense made a motion for a

6    mistrial, which the judge granted.  RT at 13.

7         C.   Second Trial

8         At the February 29, 1996, hearing on motions in limine before

9    Mustafaa's second trial, Daley told the court that he had

10   subpoenaed the bailiff and the juror from the first trial.  Weiner

11   moved for a hearing to determine the admissibility of their

12   testimony under California Evidence Code § 402, on the ground that

13   the testimony would be irrelevant and prejudicial.  The court

14   denied Weiner's request.  Later during trial, in a discussion on

15   the record but outside the presence of the jury, Weiner again

16   sought to exclude the testimony of the juror and the bailiff.  The

17   judge indicated that although the juror and bailiff could testify

18   to what they saw, they could not give their opinions about what

19   words Nicole's grandfather mouthed, or that Nicole's grandfather

20   might have been coaching her.  The judge said that without their

21   opinions, their testimony would be irrelevant.  RT at 120-22.  The

22   judge then stated to Daley,  "So maybe that helps and maybe you're

23   going to come up with something else when it's time for the

24   testimony, but I hope that gives you both some direction."  RT at

25   122.  Daley did not call the juror or the bailiff as witnesses.

26        On March 7, 1996, Mustafaa's second jury trial began.  The

27   State's main witness was Nicole, who testified that on the night of

28                                      6

March 14, 1995, she was asleep in her room when she was awakened by Mustafaa, who was rubbing her back. Resp. Ex. J, Vol. 1, RT 03/07/96, at 39 and 45. She testified that she was twelve years old at the time, and that Mustafaa had married her mother three months earlier. Id. Mustafaa told her she had had a bad dream, which she did not remember. RT at 46. He left, but returned and rubbed her back and "behind." RT at 47. When he left, she fell asleep again, but then was awakened a third time by him rubbing her chest. RT at 48. Then he touched her breast under her T-shirt and put his mouth on her breast. RT at 48 and 97. He reached into her shorts and put his finger into her vagina. RT at 48, 89 and 97. She told him to stop, and he did, telling her that it was their secret. He then went into the bathroom. RT at 49-50. Afterwards, he told her life was confusing and that he was going to the mosque. RT at 51. After he left, Nicole told her mother what happened and her mother called the police. RT at 53-54.

On cross-examination Nicole testified that Mustafaa had never made any sexual gestures toward her before that night, though her mother worked two nights a week. RT at 74-75. Nicole also fought with her mother over lies Nicole told. RT at 92.

During cross-examination, Daley sought to impeach Nicole's account of what happened on the night of March 14th, referring to inconsistencies between this testimony and her testimony at the first trial:

> Q: Now, when he left the room the first time did he go into the bathroom.
>
> A: No.

7

Q: Do you recall testifying in December?

A: Yes.

Q: Do you recall testifying in December that he went into the bathroom?

A: No, but I might have.  And if I did say that, then it's the way I remembered it then, and this is the way I remember it now.

. . .

Q: Do you recall the following questions and answers:

> "And did you say anything to him after he told you that you had a bad dream?
>
> ANSWER: I said -- I'm not sure if I said anything.  I don't quite remember that.
>
> QUESTION: Do you know how long he was there rubbing your back over your t-shirt?
>
> ANSWER: A couple of minutes after I woke up, but I'm not sure how long he was there before I woke up.
>
> QUESTION: Okay.
>
> ANSWER: He got up and went into the bathroom."

A: Like I said before, if I did say that, it's the way I remembered it then, and this is the way I remember it now.

RT at 81-82.  Daley also questioned Nicole about her inability to recall details of the incident during the first trial.  RT at 87-88. Daley asked if she had discussed her story with anyone, and  Nicole replied that since she had last testified, she had discussed it once with Weiner.  RT at 92.

On redirect, Weiner asked Nicole if she had any doubt as to the actual occurrence of the molestation, and Nicole replied that she had none.  RT at 97.

Weiner also called Officer Shannon Barbour, who was dispatched

8

United States District Court
For the Northern District of California

1   to Nicole's house after Nicole's mother called the police.  Barbour

2   testified that when she first saw Nicole, Nicole was upset, crying

3   and appeared distraught.  Barbour testified that Nicole gave her the

4   following statement of what had happened that night.  Nicole woke up

5   to Mustafaa rubbing her back.  Mustafaa told her that she had had a

6   bad dream and then rubbed her buttocks.  Mustafaa left the room at

7   some point and then returned, and he then lifted Nicole's shirt and

8   sucked her breast, and then put his hand in her underwear and his

9   finger in her vagina.  Mustafaa asked Nicole if it felt good and she

10  said, "no.".  Mustafaa said that it was their secret, that life was

11  funny sometimes and that he was going to the mosque.  RT at 100-01.

12  Barbour stated that she brought Nicole to the hospital to be

13  examined and Nicole became hysterical when she thought that Mustafaa

14  was being brought to the hospital.  RT at 104 and 109.

15      Nicole's mother testified that Mustafaa liked to be called

16  "daddy" in bed.  RT 136-37.  She stated that Nicole woke her up at

17  3:30 a.m. on March 14, 1995, and told her that Mustafaa had touched

18  her, sucked her breast, rubbed her body and placed his finger in her

19  vagina.  RT at 139.  She described her daughter as "sort of

20  hysterical."  RT at 138.  She said that it was unusual that Mustafaa

21  was not home at 3:30 a.m., and that it was not a regular prayer time

22  at the mosque.  RT at 139-40.  Nicole's mother also testified that

23  prior to that day, Mustafaa and Nicole seemed to have no serious

24  conflicts, that Nicole called him "abu," Arabic for "father," and

25  that Nicole seemed to be accepting him as a father.  RT at 135-36.

26      On cross-examination, Nicole's mother testified that Mustafaa

27  kept a separate apartment, which she referred to as his "office."

28

9

United States District Court
For the Northern District of California

1  She testified that the separate apartment was where Mustafaa did
2  leather work and stored import items for his business.  RT at 161-
3  62.

4      Weiner's fourth and final witness was Officer Serge Babka, who
5  went to Mustafaa's apartment to pick him up.  Babka testified that
6  the police dispatcher had informed him that Mustafaa was driving a
7  newer-model black Ford Escort.  RT at 173.  Babka stated that when
8  he arrived at Mustafaa's apartment he saw Mustafaa's car in the
9  gated garage.  He testified that the car's hood and radiator were
10  warm.  RT at 174.  Babka said that he knocked loudly on the door for
11  about twenty minutes, and announced he was with the Oakland Police
12  Department.  RT at 175.  Babka stated that while he was knocking, he
13  heard shuffling and someone walking inside the apartment and saw a
14  light come on.  RT at 177.  Babka said that he finally had the
15  manager open the door to the apartment, and that Mustafaa was
16  inside.  RT at 178.

17      The defense called several family members to testify that they
18  had never known Mustafaa to molest children.  Mustafaa's sister
19  Alfreeda Junior testified that she had never seen him molest young
20  girls, and another sister, Delores Junior, testified that he had a
21  reputation within the family for appropriate behavior with young
22  children.  RT at 196 and 203.  Alfreeda also said that Mustafaa had
23  been in prison for much of his adult life.  RT at 194.

24      Donna Rayford, Mustafaa's first cousin, testified that she had
25  never seen him act inappropriately with young children, and that he
26  had baby-sat her ten year old daughter several months ago.  RT at
27  206-07.  On cross-examination, she testified that she had never

28                                    10

1 asked her daughters if Mustafaa had done anything, and that she had
2 no reason to ask them.   RT at 210.

3      Dorothy Borders, a social worker who was Mustafaa's cousin, and
4 her husband, Berkeley Police Lieutenant Henry Borders, testified
5 that they had not seen anything inappropriate occur between Mustafaa
6 and young children.   RT 221 and 226.   Mr. Borders testified that he
7 believed Mustafaa's behavior had been and always would be proper,
8 and that he had not asked his nieces if anything improper had
9 happened with Mustafaa, because he was confident that nothing had
10 happened.   RT 221 and 223.   Ms. Borders testified that at the
11 wedding of Mustafaa and Nicole's mother, Nicole had cried profusely
12 on Ms. Borders's shoulder, but did not say why she was crying.   RT
13 at 226-27.

14      Janine Rayford, Mustafaa's cousin who was ten years of age at
15 the time of the trial, testified that Mustafaa had baby-sat her
16 three times, about a year prior to her testimony, and that nothing
17 bad had ever happened to her when she was alone with him.   RT at
18 211-12.   Another cousin, Lolice Perez, who was twenty-four years of
19 age at the time of the trial, testified that Mustafaa had baby-sat
20 her several times when she was about six years old and that nothing
21 "untoward" happened on those occasions.   RT at 238.

22      Mustafaa testified that he had been in prison for four and a
23 half years before his release in 1994, and that he had been
24 convicted of several bank robberies.   RT 262-67.   He testified that
25 during his last incarceration he had converted to the Muslim
26 religion and had been elected an imam of the Muslim congregation in
27 Corcoran State prison.   RT at 262-67.   He testified that after being

28                                    11

1 introduced to Nicole's mother, they got married sooner than planned
2 because they were having a sexual relationship that made them feel
3 guilty. RT at 278.

4     Mustafaa testified that his initial relationship with Nicole
5 was cold compared with the warm relationship she had with her
6 mother's former boyfriend, Andre. RT at 279. He stated that Nicole
7 argued with her mother a great deal and told many lies. RT at 280.
8 Mustafaa thought Nicole's outfits were inappropriate for a Muslim
9 household. He told her to wear different clothes and took away her
10 cosmetics. She was not happy about this. RT at 281-82.
11 Furthermore, he and Nicole's mother decided they would not celebrate
12 Christmas, because it was not an Islamic holiday, and would not buy
13 gifts. RT at 282-84. They also considered moving to a Muslim
14 country in Africa, which Nicole did not like. RT at 286-87.

15     Mustafaa testified that Nicole's biological father told her he
16 would send her a ticket to visit him in New York during Christmas,
17 but changed his mind and then challenged his paternity of Nicole.
18 Mustafaa testified that Nicole was upset by her father's behavior.
19 RT 284-86. Mustafaa stated that he was often alone with Nicole. RT
20 at 287.

21     Mustafaa testified that on the evening of March 13, 1995, he
22 went to his other apartment and worked until around midnight, and
23 then came home and went to bed. RT 290-91. When he got up later to
24 go to the bathroom, he heard Nicole whimpering in her sleep, so he
25 shook her awake, and she told him she must have been dreaming. He
26 went to the living room to get dressed and then noticed Nicole's
27 bedroom light on. He told her to turn it off and go back to sleep.

28

United States District Court
For the Northern District of California

1  After getting his coat from the closet, he noticed her light was

2  still on and he told her to turn it off again, and to tell her

3  mother that he was going to the masjid or his apartment, but that he

4  would be back in the morning in time to take Nicole to school.  RT

5  at 293.  He then left and went to the apartment until the police

6  arrived.  RT at 294.  Mustafaa testified that he did not answer the

7  door when Babka knocked because there was no reason for the police

8  to be there, and he thought that any police contact would violate

9  his parole.  RT at 270.  He denied ever having touched Nicole

10 inappropriately and swore by Allah that the things that Nicole

11 accused him of doing did not happen.  RT at 295-97.  Mustafaa

12 admitted that he had been convicted of robbery in San Francisco on

13 April 24, 1984, of bank robbery in San Francisco on July 31, 1985,

14 and of attempted robbery in San Francisco on May 4, 1989.  RT at

15 298.

16      The defense called Margaret Desler, an emergency room doctor

17 who examined Nicole on March 14, 1995.  RT at 334.  Desler testified

18 that she was a resident, and that three doctors examined Nicole on

19 March 14, 1995: intern Cindy Tsay, attending physician Sheila

20 Mackell, and herself.  RT at 335-37.  Desler testified that Nicole

21 gave her the history of what had happened that night.  Daley asked

22 Desler, "Now, the form - You record on the form what she has told

23 you; is that correct?"  Desler replied, "I personally wrote the

24 narrative part of that and record that as well as the  - and then

25 the actual examination form that's checked off and - with all the

26 different boxes.  That standardized form, I believe was filled out

27 by doctor Cindy Tsay."  RT at 336.  Desler testified that the form

28

13

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  was filled out in her presence, and that she could not remember if

2  Mackell was present when Nicole told about the events of that night.

3  RT at 336-337. Daley asked Desler to verify the contents of the

4  form.  Desler testified that all the boxes regarding penetration of

5  the vagina were marked "no."  The only box marked "yes" was labeled

6  "fondling, licking or kissing."  RT at 338.  Desler testified that

7  on that night, Nicole "appeared alert, awake, not in any real

8  distress, but scared, downcast eyes, and quiet."  Desler said that

9  Nicole's hymen was intact and that there was no redness or

10  inflamation in the genital area.  RT at 340.

11      On cross-examination, Weiner asked Desler to read what was

12  written on page two, section five of the form labeled "Physical

13  injuries and/ or pain described by patient."  Desler stated, "Put

14  his mouth on my breast.  Placed his finger in my vagina."  RT at

15  342.[2]  Weiner then asked, "And do you, therefore, notice an error on

16  this form?"  Desler noted that there is a discrepancy between the

17  written narrative and the boxes that were checked.  RT at 342.

18  Desler then testified that Tsay was the least educated of the

19  examining doctors and that she had been up for twenty-four hours and

20  was "hurriedly making X marks and writing things."  RT at 342-43.

21  Desler testified that Nicole had told her that her step-father had

22  put his mouth on her breast and placed his finger in her vagina.  RT

23  at 342-43.  Desler testified that Nicole had told her that Mustafaa

24

25      [2]The copy of the form in the record before this Court does not
   show anything written in section five on page two.  There are a few
26  faint marks, which may indicate that there is writing on the
   original that does not appear on the xeroxed copy in the record.
27  Pet. Ex. C at 2.

28                                    14

United States District Court

For the Northern District of California

1  said life was confusing.  RT at 346.  Desler also testified that she

2  would not expect to find physical evidence of digital penetration in

3  a twelve year old girl, and that Nicole was memorable because she

4  was calm and clear and told her story consistently three times, but

5  that her body language, "the way she covered her body," and "her

6  downcast eyes," made her seem "scared."  RT at 347-48.

7      Lastly, the defense called Doctor O.S. Glover, a clinical

8  psychologist.  Glover stated that he had examined Mustafaa and did

9  not find symptoms of pedophilia.  RT at 366 and 431.  On cross-

10  examination, he testified that he did not know that Mustafaa liked

11  to have his wife call him "daddy" in bed, but did not think that

12  unusual sexual behavior.  RT at 387.  Glover testified that not all

13  people who molest children are pedophiles, and that the definition

14  of a pedophile is someone who admits to having fantasies or actions

15  over a period of at least six months.  RT 396-97.  The jury

16  convicted Mustafaa on both counts in the information.

17      D.  Conviction of Priors

18      Mustafaa waived a trial by jury on the prior conviction

19  allegations, and these were tried to the court.  Resp. Ex. J, Vol.

20  2, RT 03-18-96 at 528.  The State presented certified abstracts of

21  conviction of the fourth, fifth and sixth priors charged, and a

22  fingerprint expert who matched Mustafaa's prints to the fingerprint

23  records of those prior convictions.  RT at 537.  Weiner also pointed

24  out that Mustafaa had admitted each of these priors to the jury.

25  The court found true the allegations of these priors, and the first,

26  second and third prior conviction allegations were dismissed.  RT at

27  548-49.

28

15

E.    Sentencing

On sentencing, among the documents Daley submitted for the court's consideration was a psychological report written by psychologist Kathleen O'Meara.  Resp. Ex. I, vol. 2, CT at 559-65. In the report, O'Meara first acknowledged the fact that Mustafaa had been found guilty of child molestation.  She then gave a synopsis of Mustafaa's psychological history, including the events surrounding his crimes.  She diagnosed him with an anti-social personality disorder.  O'Meara concluded that Mustafaa committed crimes to fulfill an expectation of failure which was part of "his commitment to undermin[e] his own happiness," and commented that "[t]here do not appear to be any intellectual impediments to his becoming a more successful criminal were that his motivation."  CT at 564.  In the report, O'Meara referred to Nicole's molestation as a crime that Mustafaa actually committed, stating "it was an offense of convenience."  Id.  She concluded that "Mr. Mustafaa will adjust very well to prison.  He is unlikely to present as a management problem in an environment in which he clearly feels at home."  CT at 565.

The record reflects the following conversation regarding O'Meara's report at the sentencing hearing:

> MR. DALEY: . . . I submitted and I hope the court has reviewed a psychological study of my client by Kathleen O'Meara.
>
> THE COURT: I did read that.
>
> MR. DALEY: And I did that for two reasons, one of which was that the court exercise the discretion I believe it has but may not be the case to strike the priors.  The other is that I would hope to make that report part of this record on appeal.
>      I expect that somewhere down the road the State of California will realize that the Three Strikes law as it is now

16

written is more extensive and more destructive than whatever
good it does, in which case they will have to review cases such
as Mr. Mustafaa to figure out who is a monster and needs to be
kept in for life and who should be released, and I believe at
that time this report should be in his file for that purpose.

Resp. Ex. J, vol. 2, RT at 561-62.

On May 24, 1996, Mustafaa was sentenced to twenty-five years to life as a "Three Strikes" offender, and to an additional five years as an enhancement for another prior conviction, for a total sentence of thirty years to life.  Resp. Ex. Q, CT at 210, 542, 546, 573, 605.

F.   Appeals

On his first appeal, Mustafaa was represented by attorney Francia Welker.  She filed a brief on his behalf, raising only a claim regarding his sentence.  Mustafaa filed a supplemental brief on his own behalf.  Resp. Exs. B & E.  One of Mustafaa's claims was that the trial court improperly refused to permit testimony from the juror and the bailiff.  The California court of appeal found that "[t]he court . . . expressly declined to make any ruling on the question whether the juror and the bailiff would be allowed to testify if called, and declined to hold a hearing, 'right now.' When pressed by the prosecutor, the court <u>denied</u> the prosecution's request to exclude them."  Resp. Ex. Q, CT 614; <u>People v. Mustafaa</u>, No. A074724 (emphasis in original).  The court determined that the claim had been waived or abandoned because it was unsupported by the record.  <u>Id.</u>

Mustafaa also argued that the trial court erred in denying his motion to suppress evidence or statements obtained as the result of a warrantless entry into his apartment to arrest him.  The court of

17

United States District Court
For the Northern District of California

1  appeal stated that it could not conduct a review of the trial

2  court's denial of Mustafaa's motion to suppress because Mustafaa

3  failed to include a transcript of the evidentiary hearing that was

4  held on the motion.  Pet. Ex. G. at 2-3.  The California court of

5  appeal affirmed the convictions, but remanded for re-sentencing

6  pursuant to People v. Superior Court (Romero), 13 Cal. 4th 497

7  (1996).  Resp. Ex. Q, CT at 610-19; People v. Mustafaa, No. A074724.

8  On remand, the trial court struck one of Mustafaa's prior

9  convictions and resentenced him as a "two-strike" offender,

10 resulting in a sentence of twenty-six years.  Resp. Ex. Q, CT at

11 650-52, 669-80.

12     The prosecution appealed, bringing the case before the

13 California court of appeal for the second time.  On July 24, 1998,

14 the appellate court ruled that the trial court had abused its

15 discretion in striking the prior conviction and remanded the case

16 for re-sentencing as a "three-strike" case.  Resp. Ex. Q, CT at 689-

17 99; People v. Mustafaa, No. A085603.  On remand, the trial court

18 sentenced Mustafaa to twenty-five years to life as a "three-strikes"

19 offender, with two consecutive five-year terms for prior

20 convictions.

21     Mustafaa appealed again, but on August 26, 1999, the California

22 court of appeal affirmed his sentence.  Resp. Ex. O; People v.

23 Mustafaa, No. A085603.

24     Mustafaa filed a petition for writ of habeas corpus in the

25 California court of appeal and the California Supreme Court.  Both

26 courts denied the petitions on their merits without making findings

27 of fact or law.  Resp. Exs. S, V, W, X; In re Mustafaa, Nos.

28                                     18

1 A082217, S076010.

2                          LEGAL STANDARD

3       Under the Antiterrorism and Effective Death Penalty Act

4 (AEDPA), Pub. L. No. 104-132, Title I, 110 Stat. 1214 (Apr. 24,

5 1996), amending 28 U.S.C. §§ 2244 and 2253-2255, a district court

6 may grant a petition challenging a State conviction or sentence on

7 the basis of a claim that was reviewed on the merits in State court

8 only if the State court's adjudication of the claim: "(1) resulted

9 in a decision that was contrary to, or involved an unreasonable

10 application of, clearly established Federal law, as determined by

11 the Supreme Court of the United States; or (2) resulted in a

12 decision that was based on an unreasonable determination of the

13 facts in light of the evidence presented in the State court

14 proceeding." 28 U.S.C. § 2254(d).

15      A.   Standard of Review Under § 2254(d)(1)

16      Under § 2254(d)(1), a State prisoner may obtain habeas relief

17 with respect to a claim adjudicated on the merits in State court

18 only if the State court adjudication resulted in a decision that was

19 "contrary to" or "involved an unreasonable application of clearly

20 established Federal law, as determined by the Supreme Court of the

21 United States." Williams v. Taylor, 529 U.S. 362, 402-04, 409

22 (2000). "Clearly established federal law" refers to "the holdings,

23 as opposed to the dicta, of [the Supreme] Court's decisions as of

24 the time of the relevant state-court decision." Id. at 412.  A

25 State court decision may not be overturned on habeas review simply

26 because of a conflict with circuit-based law. Duhaime v. Ducharme,

27 200 F.3d 597, 600 (9th Cir. 2000). However, circuit court decisions

28                                  19

United States District Court
For the Northern District of California

1  may be persuasive authority to determine whether a particular State
2  court holding is an "unreasonable application" of Supreme Court
3  precedent or to assess what law is "clearly established."  Id.
4      A State court's decision is "contrary to" Supreme Court law if
5  the State court "arrives at a conclusion opposite to that reached by
6  [the Supreme Court] on a question of law," or reaches a different
7  conclusion based on facts indistinguishable from a Supreme Court
8  case.  Williams, 529 U.S. at 412-13.  A State court's decision
9  constitutes an "unreasonable application" of Supreme Court precedent
10 if the State court "either (1) correctly identifies the governing
11 rule but then applies it to a new set of facts in a way that is
12 objectively unreasonable, or (2) extends or fails to extend a
13 clearly established legal principle to a new context in a way that
14 is objectively unreasonable."  Id. at 407).
15     An unreasonable application of federal law is different from an
16 incorrect or erroneous application of federal law.  Id. at 412.
17 Accordingly, "a federal habeas court may not issue the writ simply
18 because that court concludes in its independent judgment that the
19 relevant state court decision applied clearly established federal
20 law erroneously or incorrectly.  Rather, that application must also
21 be unreasonable."  Id. at 411.
22     In the Ninth Circuit, an "unreasonable application" of the
23 Supreme Court's law is one that is clearly erroneous.  Torres v.
24 Prunty, 223 F.3d 1103, 1107 (9th Cir. 2000).  Under this approach, a
25 federal district court can grant habeas relief only when its review
26 of the legal question does not merely allow it to conclude that the
27 petitioner has the better of two reasonable legal arguments, but
28
                                    20

United States District Court
For the Northern District of California

1  leaves it with a firm conviction that the answer rejected by the
2  State court was correct and the application of the federal law that
3  the court adopted was erroneous, in other words, that clear error
4  occurred.  Id. at 1108.

5      B.    Standard of Review Under § 2254(d)(2)

6      Under 28 U.S.C. § 2254(d)(2), a federal habeas court may grant
7  the writ if it concludes that the State court's adjudication of the
8  claim resulted in a decision that "was based on an unreasonable
9  determination of the facts in light of the evidence presented in the
10 State court proceeding."  Id. at 1107 (quoting 28 U.S.C.
11 § 2254(d)(2) and Williams, 529 U.S. at 412-13).  The "clearly
12 erroneous" standard of unreasonableness that applies in determining
13 the "unreasonable application" of federal law under § 2254(d)(1)
14 also applies in determining the "unreasonable determination of facts
15 in light of the evidence" under § 2254(d)(2).  Id. at 1107-08.  To
16 grant relief under § 2254(d)(2), a federal court must be "left with
17 a firm conviction that the determination made by the state court was
18 wrong and that the one [petitioner] urges was correct."  Id. at 1108
19 (internal quotation marks omitted).

20     C.    Last Reasoned Decision

21     In determining whether the State court's decision is contrary
22 to, or involved an unreasonable application of, clearly established
23 federal law, a federal court looks to the decision of the highest
24 State court to address the merits of a petitioner's claim in a
25 reasoned decision.  LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th
26 Cir. 2000).

27     The standard of review under AEDPA is somewhat different where
28
                                    21

the State court gives no reasoned explanation of its decision on a
petitioner's federal claim and there is no reasoned lower court
decision on the claim.  In such a case, a review of the record is
the only means of deciding whether the State court's decision was
objectively reasonable.  Greene v. Lambert, 288 F.3d 1081, 1088-89
(9th Cir. 2002); Bailey v. Newland, 263 F.3d 1022, 1028 (9th Cir.
2001) cert. den. 535 U.S. 995 (2002).  When confronted with such a
decision, a federal court should conduct "an independent review of
the record" to determine whether the State court clearly erred in
its application of controlling federal law.  Id.  The federal court
need not otherwise defer to the State court decision under AEDPA:
"A state court's decision on the merits concerning a question of law
is, and should be, afforded respect.  If there is no such decision
on the merits, however, there is nothing to which to defer."
Greene, 288 F.3d at 1089.  In sum, "while we are not required to
defer to a state court's decision when that court gives us nothing
to defer to, we must still focus primarily on Supreme Court cases in
deciding whether the state court's resolution of the case
constituted an unreasonable application of clearly established
federal law."  Fisher v. Roe, 263 F.3d 906, 914 (9th Cir. 2001),
abrogated on other grounds, Mancuso v. Olivarez, 292 F.3d 939, 944
n.1 (9th Cir. 2002).

                              DISCUSSION

     Because the State appellate court and supreme court did not
provide reasoned decisions for their rejection of Mustafaa's habeas
claims, this Court conducts an independent review of the record to
determine whether the State courts clearly erred in their

                                 22

1  application of controlling federal law.

2  I.   Ineffective Assistance of Trial Counsel

3       Mustafaa argues that the representation he received at trial
4  constituted ineffective assistance of counsel.  A claim of
5  ineffective assistance of counsel is cognizable as a claim of denial
6  of the Sixth Amendment right to counsel, which guarantees not only
7  assistance, but effective assistance of counsel.  <u>Strickland v.</u>
8  <u>Washington</u>, 466 U.S. 668, 686 (1984).  The benchmark for judging any
9  claim of ineffectiveness must be whether counsel's conduct so
10 undermined the proper functioning of the adversarial process that
11 the trial cannot be relied upon as having produced a just result.
12 <u>Id.</u>[3]

13      First, the defendant must show that counsel's performance was
14 deficient.  This requires showing that counsel made errors so
15 serious that counsel was not functioning as the "counsel" guaranteed
16 by the Sixth Amendment.  <u>Id.</u> at 687.  The defendant must show that
17 counsel's representation fell below an objective standard of
18 reasonableness.  <u>Id.</u> at 688.  The relevant inquiry is not what
19 defense counsel could have done, but rather whether the choices made
20 by defense counsel were reasonable.  <u>Babbitt v. Calderon</u>, 151 F.3d
21 1170, 1173 (9th Cir. 1998).  Judicial scrutiny of counsel's
22 performance must be highly deferential, and a court must indulge a
23 strong presumption that counsel's conduct falls within the wide

24

25      [3]The <u>Strickland</u> framework for analyzing ineffective assistance
   of counsel claims is considered to be "clearly established Federal
26 law, as determined by the Supreme Court of the United States" for
   the purposes of 28 U.S.C. § 2254(d) analysis.  <u>Williams (Terry) v.</u>
27 <u>Taylor</u>, 529 U.S. 362, 404-08 (2000).

28                                23

range of reasonable professional assistance. <u>Strickland</u>, 466 U.S. at 689. A habeas petitioner has the burden of showing through evidentiary proof that counsel's performance was deficient.. <u>Toomey v. Bunnell</u>, 898 F.2d 741, 743 (9th Cir.), <u>cert. denied</u>, 498 U.S. 960 (1990).

A difference of opinion as to trial tactics does not constitute denial of effective assistance, and tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available. <u>United States v. Mayo</u>, 646 F.2d 369, 375 (9th Cir. 1981); <u>Bashor v. Risley</u>, 730 F.2d 1228, 1241 (9th Cir. 1984); <u>United States v. Ferreira-Alameda</u>, 815 F.2d 1251 (9th Cir. 1986). Tactical decisions of trial counsel deserve deference when: (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an informed decision based upon investigation; and (3) the decision appears reasonable under the circumstances. <u>Sanders v. Ratelle</u>, 21 F.3d 1446, 1456 (9th Cir. 1994); <u>see, e.g.</u>, <u>Babbitt</u>, 151 F.3d at 1174 (counsel's decision not to present cumulative lay testimony supporting a mental defense addressed by defense experts was not unreasonable); <u>Siripongs v. Calderon</u>, 133 F.3d 732, 734 (9th Cir. 1998)(court evaluates failure to investigate or produce evidence for "strategic reasonableness").

Second, the defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. <u>Strickland</u>, 466 U.S. at 688. The test for prejudice is not outcome-determinative, i.e., the defendant need not show that the deficient conduct more likely than not altered the outcome of the case; however, a simple showing that the defense was

24

United States District Court

For the Northern District of California

1  impaired is also not sufficient. <u>Id.</u> at 693.  The defendant must
2  show that there is a reasonable probability that, but for counsel's
3  unprofessional errors, the result of the proceeding would have been
4  different; a reasonable probability is a probability sufficient to
5  undermine confidence in the outcome.  <u>Id.</u> at 694.  In <u>Strickland</u>,
6  the Supreme Court stated, "Although we have discussed the
7  performance component of an ineffectiveness claim prior to the
8  prejudice component, there is no reason for a court deciding an
9  ineffective assistance claim to approach the inquiry in the same
10 order or even to address both components of the inquiry if the
11 defendant makes an insufficient showing on one."  <u>Id.</u> at 697; <u>see</u>
12 <u>also</u> <u>Williams v. Calderon</u>, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995)
13 (courts need not determine whether counsel's performance was
14 deficient before examining prejudice suffered by defendant as result
15 of alleged deficiencies); <u>Siripongs</u>, 133 F.3d at 737 (unnecessary
16 for federal court considering habeas ineffective assistance claim to
17 address prejudice prong of <u>Strickland</u> test if petitioner cannot
18 establish incompetence under first prong.)
19      A.   Failure to Investigate Prior Molestation
20      Mustafaa argues that Daley provided ineffective counsel because
21 he failed to investigate an allegation that Nicole's biological
22 father had also molested Nicole.  Mustafaa provides a declaration
23 from Dorothy Borders in which she states that in November, 1995, she
24 informed Daley that Nicole's mother had told her that Nicole's
25 biological father had molested Nicole "in a manner not unlike the
26 described actions she says were done to her by her stepfather."
27 Petition, Ex. A at 2.  Mustafaa suggests that the prior allegation

28                                25

1 of molestation would have constituted a potentially meritorious
2 defense had Daley argued that Nicole's mother manufactured such
3 allegations to get out of relationships she no longer found to her
4 liking.  During in limine motions, Daley stated his intention to
5 question Nicole about the prior molestation allegation, and Weiner
6 stated that Social Services' findings had been inconclusive, but
7 that the charges against Nicole's father and the investigation by
8 Social Services were the basis for Nicole's father receiving only
9 supervised visits with Nicole.  Resp. Ex. J, Vol. 1, RT 02/29/96, at
10 13.

11      A defendant's mere speculation that a witness might have given
12 helpful information if interviewed is not enough to establish
13 ineffective assistance.  See Bragg v. Galaza, 242 F.3d 1082, 1087
14 (9th Cir.), amended, 253 F.3d 1150 (9th Cir. 2001).  When denying a
15 petitioner's claim that his counsel was ineffective for failure to
16 investigate several issues, including the circumstances of one
17 victim's arrest for robbery and assault and whether another victim
18 owned a gun, the Ninth Circuit stated, "Absent an account of what
19 beneficial evidence investigation into any of these issues would
20 have turned up, [petitioner] cannot meet the prejudice prong of the
21 Strickland test."  Hendricks v. Calderon, 70 F.3d 1032, 1042 (9th
22 Cir. 1995).

23      Although Mustafaa suggests that interviewing Nicole's father
24 and investigating the Social Services records would have turned up
25 information about the prior molestation allegation that could have
26 been used to impeach Nicole and her mother, he does not specify what
27 favorable information existed for Daley to discover through adequate

28

United States District Court
For the Northern District of California

26

1  investigation.  For example, Mustafaa does not show that the
2  allegation of molestation against Nicole's biological father was
3  false, that Nicole's mother made the allegation to get out of her
4  relationship with Nicole's biological father, or that Nicole's
5  mother wanted to end her relationship with Mustafaa.  Consequently,
6  he has not shown how further investigation of this issue would have
7  led to a reasonable probability that the outcome of his trial would
8  have been different.  Therefore, this claim of ineffective
9  assistance of counsel is denied.

10     B.  Failure to Interview Victim or Her Mother

11     Mustafaa claims that Daley's representation was ineffective due
12  to his failure to interview Nicole and her mother, which deprived
13  the defense of any potential evidence that Daley would have gleaned
14  from them.  Again, a defendant's mere speculation that a witness
15  might have given helpful information if interviewed is not enough to
16  establish ineffective assistance.  Bragg, 242 F.3d at 1087.
17  Mustafaa fails to indicate what information Daley could have learned
18  had he interviewed Nicole and her mother.  Consequently, he has not
19  shown the reasonable probability that such evidence would have
20  altered the outcome of his trial.

21     C.  Disclosure of Confidential Information to Prosecution

22     Mustafaa argues that Daley's representation was ineffective
23  because he disclosed to the prosecution the fact that he had hired
24  O'Meara, a psychologist whom he decided not to call as a witness at
25  trial.  Mustafaa argues the prosecution used this fact to suggest to
26  the jury that Mustafaa may have been deemed a pedophile by one
27  psychologist, necessitating the hiring of a second psychologist.

28                              27

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    On cross-examination, Weiner asked Mustafaa, "Doctor Glover
2  wasn't the first psychologist [defense counsel] had hired on your
3  behalf, was it?"  The court sustained Daley's objection for lack of
4  relevance.  Resp. Ex. J, RT 317-18.  The court later instructed the
5  jury that it should "not assume to be true any insinuation suggested
6  by a question asked a witness.  A question is not evidence."  RT at
7  496.

8    In Greer v. Miller, 483 U.S. 756, 766 n.8 (1987), the Supreme
9  Court explained, "We normally presume that a jury will follow an
10  instruction to disregard inadmissible evidence inadvertently
11  presented to it, unless there is an 'overwhelming probability' that
12  the jury will be unable to follow the court's instructions . . . and
13  a strong likelihood that the effect of the evidence would be
14  'devastating' to the defendant."  In Greer, the Court found that the
15  prosecutor's inappropriate question regarding the defendant's
16  silence was cured when the trial court sustained defense counsel's
17  objection and advised the jury to disregard any questions to which
18  an objection had been sustained.  Id. at 764.

19    Similarly, the trial court in the present case immediately
20  sustained defense counsel's objection to the question, and later
21  instructed the jury that questions should not be considered as
22  evidence.  Because the question was properly cured and did not pose
23  a "strong likelihood" of having a "devastating" effect on his
24  defense, Mustafaa fails to demonstrate a reasonably probability that
25  Daley's disclosure to the prosecution altered the outcome of the
26  trial.

27

28
                                28

1      D.  Calling Unqualified Expert

2          Mustafaa argues that Daley's representation was ineffective

3   because he called Glover as an expert on pedophilia, but he should

4   have called O'Meara, who specializes in the treatment of sexual

5   disorders, including pedophilia.  Mustafaa argues that Daley

6   undermined the evidence that Mustafaa was not a pedophile by putting

7   on an unqualified expert witness.  Mustafaa argues that had Daley

8   investigated Glover's qualifications, he would have realized Glover

9   was not an expert on the subject of pedophilia, had never testified

10  on the subject before and had no formal education or special

11  training in that area of psychology.  Instead, these facts were

12  brought out by Weiner's cross-examination of Glover.  Resp. Ex. J,

13  Vol. 2, RT 03/12/96, at 366-67.

14         Mustafaa fails to submit evidence establishing that Daley's

15  decision to call Glover, rather than O'Meara, as an expert witness

16  was not an informed decision based on investigation or that Daley's

17  decision was unreasonable under the circumstances.  Rather, Daley's

18  decision to use Glover as an expert is typical of a tactical

19  decision made by a trial attorney which must be accorded deference.

20  Because Mustafaa fails to prove otherwise, he fails to show that

21  Daley's performance was deficient on this ground.

22         E. Amendments to the Information

23         Mustafaa argues that Daley rendered ineffective assistance

24  because he failed to object to amendments to the information and

25  failed to ensure that Mustafaa was re-arraigned after the

26  information was amended.  He argues that California law requires

27  that amendments to an information be approved by the court and that

28                                 29

United States District Court
For the Northern District of California

1  the court did not approve the hand-corrected amendment of the sixth

2  prior from § 211 to § 664/212.5.  However, the record shows that

3  this amendment was approved by the judge.  Thus, Mustafaa does not

4  show that had Daley objected to the amendments his objections would

5  have been sustained.  Therefore, Mustafaa fails to support his claim

6  for ineffective assistance of trial counsel based on Daley's failure

7  to object to the amendments.

8      Although Mustafaa was arraigned on the original information and

9  re-arraigned on the first and second amended informations, Resp. Ex.

10 I, CT at 95, 113, 212, 226, he argues that counsel was ineffective

11 for failing to ensure that he was re-arraigned after the hand-

12 correction of the third prior from Alameda to Washoe County and of

13 the sixth prior from § 211 to § 212.5.  Mustafaa argues that he

14 would not have waived a jury trial on the sixth prior had he known

15 it alleged a § 211 violation, because he was not charged with or

16 convicted of a § 211 violation in 1989.

17     However, Mustafaa was arraigned on the original and first

18 amended informations, both of which charged this prior as attempted

19 robbery, a § 212.5(b) violation, and on the second amended

20 information, which charged it as attempted robbery, a § 211

21 violation.  He was present when the second amended information was

22 hand-corrected to § 664/212.5.  An attempted armed robbery of a

23 person at an automatic teller machine is a violation of § 211;

24 § 212.5(b) merely defines it as first degree robbery.  The same

25 prior conviction was charged throughout and it is clear that

26 Mustafaa was aware of which conviction it was.  Mustafaa's claim

27 that he would not have waived jury had he known what was charged in

28                                    30

United States District Court
For the Northern District of California

1  this prior is contradicted by the record.  Moreover, he fails to
2  present any evidence that suggests that a jury trial on the prior
3  would have resulted in a different outcome.  Therefore, Mustafaa
4  fails to show that Daley's performance was either deficient or
5  prejudicial for failing to ensure that Mustafaa was re-arraigned on
6  the corrections to the prior conviction allegations.

7        F.  Arguing Guilt by Submitting Psychological Report

8        Mustafaa argues that Daley rendered ineffective assistance by
9  introducing O'Meara's post-trial report during the sentencing
10 hearing.  He reasons that, because the report included adverse
11 conclusions, Daley effectively conceded Mustafaa's guilt and argued
12 against him by submitting the report to the court.

13       Although O'Meara, in her report, assumed Mustafaa committed the
14 crimes with which he had been convicted and concluded that Mustafaa
15 would feel at home in prison, she also indicated that he committed
16 this crime out of a "pathetic" need to undermine his own happiness.
17 Daley submitted the report only at Mustafaa's sentencing hearing
18 after Mustafaa had been convicted of child molestation, and the
19 sentencing discussion concerned the court's consideration of
20 Mustafaa's prior crimes.

21       It is clear from Daley's statements to the trial court, when
22 submitting the report, that he did so for strategic reasons.  He
23 hoped that it would help convince the judge to strike one of
24 Mustafaa's prior convictions and result in a lighter sentence.
25 Resp. Ex. J, vol. 2, RT at 561-62.  After a guilty verdict, and for
26 the purpose of sentencing, this was not an unreasonable strategy.
27 Daley's performance was not rendered deficient by his submission of

28                                 31

1  the report.

2      Furthermore, although the trial court acknowledged having read

3  the report, there is no indication that it had an adverse effect on

4  the court's sentencing decision.  When the case was remanded after

5  the first appeal for an exercise in sentencing discretion, the court

6  cited other submissions made on Mustafaa's behalf and stated, "I

7  believe[] that the defendant has made a sufficient attempt to lead a

8  responsible life, and that that would warrant me striking the prior

9  [sic]," which the court then did.  Resp. Ex. Q, vol. 3, CT at 672

10  and 677-78.  Mustafaa fails to meet his burden of proving prejudice,

11  by showing how, absent this report, his sentence would have been

12  different.

13      G.   Failure to Call Bailiff and Juror Regarding Coaching of
            Victim

14

15      Mustafaa claims that Daley rendered ineffective assistance

16  because he failed to call the juror and bailiff from Mustafaa's

    first trial to testify that they had observed Nicole's grandfather
17
    gesturing and mouthing words to her while she was testifying.  He
18
    argues the evidence indicates that Nicole was coached, and because
19
    Nicole's testimony was central to the prosecution's case, failure to
20
    call these witnesses denied him the right to impeach the key witness
21
    against him.
22
        As noted above, the trial judge addressed the admissibility of
23
    these witnesses' testimony on two occasions: during a hearing on
24
    motions in limine and during the trial.  On both occasions the judge
25
    indicated that the witnesses' observations of Nicole's grandfather
26
    were irrelevant because he would not allow them to testify to what
27

28                                      32

1 words Nicole's grandfather appeared to be mouthing, or to the
2 conclusion that Nicole might have been coached by her grandfather.
3 The judge stated, "So maybe that helps, and maybe you're going to
4 come up with something else when it's time for the testimony, but I
5 hope that gives you both some direction." Resp. Ex. J, Vol. 1, RT
6 at 122. It was not unreasonable for Daley not to call the juror and
7 bailiff after the court clearly indicated that their testimony would
8 be irrelevant and inadmissible without "something else." Therefore,
9 Mustafaa fails to show that Daley's performance was deficient.

10    H.    Failure to Interview or Call Emergency Room Doctors
11    Mustafaa argues that Daley rendered ineffective assistance of
12 counsel because Daley failed to interview all three emergency room
13 doctors who had contact with Nicole on the night of March 14, 1995.
14 Mustafaa argues that it was inappropriate for Daley to use Desler as
15 a witness, because one of the other doctors may have provided
16 testimony that would have called Nicole's credibility into question.
17 In support of this argument, Mustafaa presents the form filled out
18 by the doctors who examined Nicole on the night of March 14, 1995,
19 on which the boxes following questions about penetration of vagina
20 were marked "no." Pet. Ex. C at 2. However, the form also contains
21 a section, labeled "Physical injuries and/or pain described by
22 patient." Desler testified at trial that this section contains the
23 statement: "Put his mouth on my breast. Placed his finger in my
24 vagina." Id. at 342. The last page contains a section labeled
25 "Personnel Involved." It indicates that Nicole's history was taken
26 by "C. Tsay, MD" and "M. Desler MD," and the physical examination
27 was performed by "M. Desler MD" and "S. Mackell." The bottom of the

28

33

United States District Court
For the Northern District of California

last page contains the signatures of the physical examiners, "Sheila
M. Mackell MD" and "Margret Desler."   <u>Id.</u> at 5.   Mustafaa argues
that had Daley interviewed any of the doctors, he might have
discovered that Tsay or Mackell may have had observations of
Nicole's state which were more favorable to the defense, and might
have heard an account of that night's events from Nicole which was
less incriminating to Mustafaa.

As explained above, a habeas petitioner has the burden of
showing through evidentiary proof that counsel's performance was
deficient.   <u>Toomey</u>, 898 F.2d at 743.   Furthermore, a defendant's
mere speculation that a witness might have given helpful information
if interviewed is not enough to establish ineffective assistance.
<u>Bragg</u>, 242 F.3d at 1087.

Although Mustafaa states that Daley's records clearly
demonstrate that Daley did not ask his investigator to interview
doctors Desler, Tsay and Mackell, Mustafaa fails to provide this
Court with those records, or other evidentiary proof that the
interviews or investigation did not take place.

Mustafaa also fails to provide evidence that establishes that
Tsay or Mackell would have testified favorably for the defense.
Although Mustafaa provides the report as evidence that Tsay may have
testified that the story she heard Nicole tell did not include
digital penetration, the report alone does not establish that her
testimony would have been favorable.   On cross-examination Desler
testified that Tsay had been awake for twenty-four hours by the time
she filled out the report.   The report does not show that Tsay's
testimony would not have been that she was tired and made a mistake,

34

United States District Court
For the Northern District of California

1 or simply did not hear Nicole's entire story that night.  Because
2 Mustafaa fails to establish that Tsay or Mackell's testimony would
3 have been favorable, he does not show that he was prejudiced by any
4 failure to investigate by Daley.

5       Furthermore, even if Mustafaa had established that Daley had
6 failed to investigate and that Tsay would have testified favorably
7 for the defense, he fails to show that had Daley called Tsay there
8 is a reasonable probability that the outcome would have been
9 different.  Tsay's hypothetical favorable testimony would have been
10 contradicted by another portion of the same report, in which Desler
11 recorded Nicole's account of vaginal penetration.  Therefore,
12 Mustafaa fails to show prejudice from any failure by Daley to
13 interview the emergency room doctors, and this ineffective
14 assistance of counsel claim is denied.

15 II.    Ineffective Assistance of Appellate Counsel

16       The Due Process Clause of the Fourteenth Amendment guarantees a
17 criminal defendant the effective assistance of counsel on his first
18 appeal as of right.  Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).[4]
19 Claims of ineffective assistance of appellate counsel are reviewed
20 according to the standard set out in Strickland v. Washington, 466
21 U.S. 668 (1984); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.
22 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir. 1986).

23

24       [4]Although the right to the effective assistance of trial counsel
   is guaranteed to State criminal defendants by the Sixth Amendment as
25 applied to the States through the Fourteenth Amendment, Evitts, 469
   U.S. at 392, the Sixth Amendment does not address a defendant's rights
26 on appeal; the right to effective assistance of appellate counsel is
   derived purely from the Fourteenth Amendment's due process guarantee,
27 see id.

28                                    35

1  Therefore, a defendant must show that counsel's advice fell below an
2  objective standard of reasonableness and that there is a reasonable
3  probability that, but for counsel's unprofessional errors, he would
4  have prevailed on appeal. <u>Miller</u>, 882 F.2d at 1434 & n.9 (citing
5  <u>Strickland</u>, 466 U.S. at 688, 694; <u>Birtle</u>, 792 F.2d at 849).

6      A.  Failure to Challenge Prior Conviction

7      Mustafaa argues that Welker, who represented Mustafaa on his
8  first direct appeal, did not provide effective representation
9  because she failed to investigate the sufficiency of evidence
10 supporting the fourth alleged prior robbery conviction on April 24,
11 1984, which was found true and which was used to enhance his
12 sentence by an additional five years.  Mustafaa offers two arguments
13 against the validity of the fourth prior that he asserts would have
14 succeeded on appeal.  First, he claims that Welker would have
15 discovered through investigation that the transcript of the plea to
16 the prior robbery conviction established that the true name of the
17 defendant in that case was Carl Tyrone Matthews.  Traverse at 14.

18     Second, Mustafaa argues that although fingerprint evidence
19 proved that he was also Terry Matthews, an alias that he used, no
20 fingerprint evidence proved that he also used the alias of Carl
21 Tyrone Matthews.  Resp. Ex. K (People's Ex. 3 at trial).
22 Furthermore, no other evidence suggested that Mustafaa had ever used
23 that name.  Mustafaa claims that although he admitted the truth of
24 an April 24, 1984 robbery conviction, he did not admit to any
25 offense committed by "Carl Tyrone Matthews," and that Welker should
26 have challenged the sufficiency of evidence connecting Mustafaa to
27 Carl Tyrone Matthews.

28                              36

1  Finally, he argues that the appellate court on appeal of an
2  earlier conviction, which had been enhanced by the use of this same
3  prior, had found insufficient evidence of the prior.  In <u>People v.</u>
4  <u>Matthews</u>, 229 Cal. App. 3d. 930, 940-41 (1991), the court held that
5  the rap sheets that were admitted to connect Mustafaa to the name
6  "Carl Tyrone Matthews" were not properly certified, and that there
7  was no other evidence connecting Mustafaa to the April 24, 1984
8  robbery conviction.

9  As noted above, a court need not determine whether counsel's
10 performance was deficient before examining the prejudice prong of an
11 ineffective assistance of counsel claim.  Mustafaa's burden of
12 showing prejudice as a result of appellate counsel's failure to
13 investigate an insufficient evidence claim necessitates his showing
14 that there was additional evidence Welker should have uncovered,
15 which would have supported the claim that Mustafaa did not commit
16 the prior crime.  Mustafaa must also show that had Welker presented
17 such evidence on appeal, there is a reasonable probability that he
18 would have received appellate relief.

19 Mustafaa included the claim of insufficient evidence of the
20 prior conviction in his supplemental brief on his first direct
21 appeal.  Distinguishing this case from <u>People v. Matthews</u>, 229 Cal.
22 App. 3d. 930, the appellate court noted that the record in this case
23 contained the fingerprint evidence, and Mustafaa's admission that he
24 had a prior robbery conviction on April 24, 1984, although it held
25 that Mustafaa had waived his claim due to Daley's failure to object
26 to the prosecutor's submission of evidence of the priors at trial.

27 Mustafaa does not present new evidence which Welker should have

28

37

1  discovered upon investigation, and which would have changed the

2  outcome of the appeal.  Therefore, Mustafaa fails to show prejudice

3  and this ineffective assistance of counsel claim fails.

4      B.  Failure to Augment the Appellate Record

5      Mustafaa argues that Welker's performance was ineffective

6  because she failed to include a transcript of the suppression

7  hearing in the record before the State appellate court, leaving that

8  court no choice but to rule against him on the issue.  Before trial,

9  Mustafaa had sought to suppress Babka's testimony that Mustafaa did

10  not answer the door to his apartment on the night of March 14th,

11  despite Babka's repeated knocks.  Resp. Ex. C at 9. (Mustafaa's pro

12  se supplemental brief on first direct appeal).

13      In his supplemental brief, Mustafaa appealed the trial court's

14  adverse ruling on his motion to suppress, but the transcript of the

15  hearing was not included in the appellate record.  The appellate

16  court explained, "Without benefit of the transcript we cannot know

17  what evidence was presented or objected to, and what factual

18  findings, if any, were made."  Pet. Ex. G. at 2-3. (California court

19  of appeal's opinion on first direct appeal); People v. Mustafaa, no.

20  A074724.

21      Mustafaa has failed to establish that he was prejudiced by

22  Welker's failure to present this issue to the court of appeal.  Most

23  of Babka's testimony concerned facts that he observed before he

24  entered Mustafaa's apartment and these facts would not have been

25  suppressed.  As detailed above, Babka testified that he identified

26  Mustafaa's car in the gated garage at Mustafaa's address, that the

27  hood and radiator were warm, that he heard someone moving around

28

38

1 | inside Mustafaa's apartment and that he saw a light come on while he
2 | was knocking loudly and identifying himself as an Oakland police
3 | officer.  Resp. Ex. J, Vol. 1, RT at 173-78.  The only fact that
4 | might have been excluded was that when the door to Mustafaa's
5 | apartment was opened, Mustafaa was inside.  Even if Babka's entry
6 | into Mustafaa's apartment was illegal, the facts obtained before the
7 | entry were enough for a jury to conclude that Mustafaa was inside
8 | his apartment, and not answering the door in response to Babka's
9 | loud knocking.  Therefore, it is not reasonably probable that the
10 | result of Mustafaa's appeal would have been different if Welker had
11 | submitted the hearing transcript to the appellate court.  Mustafaa's
12 | claim of ineffective assistance of appellate counsel based on this
13 | ground is denied.

14 | III.  Due Process

15 | Mustafaa argues that he suffered several due process
16 | violations.  His first three due process claims arise out of the
17 | amendments to the prior convictions charged in his information,
18 | which are also raised in his ineffective assistance of counsel
19 | claim.  Mustafaa argues his due process rights were violated because
20 | the amendment to the sixth prior was not made with the trial court's
21 | approval, a violation of California Penal Code § 1009, because he
22 | had a right to be re-arraigned after the amendments, and because his
23 | jury trial waiver on the prior convictions was ill-informed.  He
24 | also claims that a prior conviction with which his sentence was
25 | enhanced was invalid.  Finally, he argues that his due process
26 | rights were violated by improper argument by the prosecutor.

27 | A writ of habeas corpus is unavailable for violations of State

28 |

39

**United States District Court**
For the Northern District of California

1  law or for alleged error in the interpretation or application of

2  State law.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

3  However, a State court's procedural or evidentiary ruling may be

4  subject to federal habeas review if it violates federal law, either

5  by infringing upon a specific federal constitutional or statutory

6  provision or by depriving the defendant of the fundamentally fair

7  trial guaranteed by due process.  Pulley v. Harris, 465 U.S. 37, 41

8  (1984); Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991).

9  A federal court may disturb on due process grounds a State court's

10 procedural or evidentiary ruling only if the ruling was arbitrary or

11 so prejudicial that it rendered the trial fundamentally unfair.

12 Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995); Colley v.

13 Sumner, 784 F.2d 984, 990 (9th Cir. 1986).

    A.    Failure to Amend with Trial Court's Approval in
          Accordance with California Penal Code § 1009

16      Mustafaa argues that he was deprived of his due process rights

17 on February 29, 1996, when the sixth prior was hand-corrected,

18 allegedly without the approval of the court as required by

19 California Penal Code § 1009.[5]  However, as noted above, the trial

20 judge did approve this correction, in the presence of Mustafaa and

21 his attorney.

22      Even if the trial court had failed to follow California Penal

_____

23      [5] California Penal Code § 1009 provides, "The court in which
24 an action is pending may order or permit an amendment of an
   indictment, accusation or information, or the filing of an amended
25 complaint, for any defect or insufficiency, at any stage of the
   proceedings, . . . The defendant shall be required to plead to such
26 amendment or amended pleading forthwith . . ., an indictment or
   accusation cannot be amended so as to change the offense charged,
27 nor an information so as to charge an offense not shown by the
   evidence taken at the preliminary examination."

28                                    40

1 Code § 1009, there would be no violation of federal law. Mustafaa
2 fails to show that the State court's application of State law was so
3 prejudicial or arbitrary that it rendered his trial fundamentally
4 unfair.

5        B.    Failure to Rearraign after Amendments to Information

6        Mustafaa argues that after the hand-corrected amendments to the
7 information were made with regard to the third and sixth priors, the
8 court failed to re-arraign him, thereby depriving him of his due
9 process right to receive notice of the charges against him.  The
10 Sixth Amendment guarantees a criminal defendant a fundamental right
11 to be clearly informed of the nature and cause of the accusation
12 against him.  <u>Calderon v. Prunty</u>, 59 F.3d 1005, 1009 (9th Cir.
13 1995); <u>Nevius v. Sumner</u>, 852 F.2d 463, 471 (9th Cir. 1988).  To
14 determine whether a defendant has received fair notice of the
15 charges against him, the court looks first to the information.
16 <u>James v. Borg</u>, 24 F.3d 20, 24 (9th Cir. 1994); <u>Lincoln v. Sunn</u>, 807
17 F.2d 805, 812 (9th Cir. 1987).  The principal purpose of the
18 information is to provide the defendant with a description of the
19 charges against him in sufficient detail to enable him to prepare a
20 defense.  <u>James</u>, 24 F.3d at 24; <u>United States v. Lane</u>, 765 F.2d
21 1376, 1380 (9th Cir. 1985).

22        Prior convictions that increase the maximum penalty need not be
23 charged to comport with the constitutional right to fair notice
24 because they are not considered an element of the offense charged.
25 <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 243-44 (1998);
26 <u>United States v. Pacheco-Zepeda</u>, 234 F.3d 411, 414-15 (9th Cir.
27 2001), <u>cert. denied</u>, 532 U.S. 966 (2001) (holding that <u>Almendarez-</u>

28                                      41

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1 <u>Torres</u> remains good law after <u>Apprendi v. New Jersey</u>, 530 U.S. 466

2 (2000), and provides that prior convictions, whether or not admitted

3 by the defendant on the record, are sentencing factors rather than

4 elements of the crime).  This is because, unlike other grounds used

5 to enlarge the possible penalty for an offense (e.g., whether

6 serious bodily injury results, <u>Jones v. United States</u>, 526 U.S. 227,

7 242-43 (1999)), prior convictions have been established through

8 procedures satisfying the fair notice, reasonable doubt and jury

9 trial guarantees.  Because the constitution does not require the

10 charging of sentencing-enhancing prior convictions, Mustafaa did not

11 suffer a due process violation even if he was not rearaigned after

12 the amendments to the priors.

13      Furthermore, Mustafaa fails to show that the trial court's

14 alleged improper application of State law was "arbitrary or so

15 prejudicial that it rendered the trial fundamentally unfair."

16 <u>Walters</u>, 45 F.3d at 1357.  Mustafaa was adequately notified of the

17 prior convictions with which he was charged.

18            C.   Denial of Jury Trial on Prior Conviction

19      In his traverse, Mustafaa argues that if he had known he was

20 being charged as the sixth prior conviction with a violation of

21 California Penal Code § 211, rather than § 215.5, he would not have

22 waived his right to a jury trial on that prior.  The Sixth Amendment

23 affords federal criminal defendants the right to trial by an

24 impartial jury.  The right to a jury trial applies to State criminal

25 defendants through the Due Process Clause of the Fourteenth

26 Amendment.  <u>Duncan v. Louisiana</u>, 391 U.S. 145, 149 (1968).  However,

27 the right to a jury trial regarding a prior conviction is not

28                                    42

1  guaranteed by the constitution.  See Apprendi, 530 U.S. at 490

2  ("Other than the fact of a prior conviction, any fact that increases

3  the penalty for a crime beyond the prescribed statutory maximum must

4  be submitted to a jury, and proved beyond a reasonable doubt.")

5  Mustafaa did not have a constitutional right to a jury trial on the

6  fact of a prior conviction.

7      Furthermore, Mustafaa fails to show that his waiver of a jury

8  trial on the prior was ill-informed, or that it increased his

9  sentence in violation of his due process rights.  During cross-

10  examination, Weiner asked Mustafaa if he had suffered an attempted

11  robbery conviction in San Francisco on May 4, 1989, and he answered

12  that he had.  Resp. Ex. J, Vol. 2, RT at 298.  Even if the State

13  afforded Mustafaa the right to a jury trial on his prior, he did not

14  suffer prejudice by waiving it because he admitted to the sixth

15  prior at trial.  Therefore, this due process claim is denied.

16      D.  Invalidity of Prior Conviction

17      Mustafaa argues that his due process rights were violated

18  because his sentence was enhanced with the April 24, 1984, prior

19  robbery conviction for which there was insufficient evidence.  This

20  is the same conviction on which Mustafaa bases his claim for

21  ineffective assistance of appellate counsel for failure to challenge

22  a prior conviction.  Mustafaa claims that he never admitted to a

23  conviction received under the name Carl Tyrone Matthews.  Evidence

24  of a prior conviction is sufficient if after viewing the evidence in

25  the light most favorable to the prosecution, any rational trier of

26  fact could have found the essential elements of the crime beyond a

27  reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).

28                              43

United States District Court
For the Northern District of California

1    During cross-examination, Weiner asked Mustafaa, "On April
2  24th, 1984, you were convicted of robbery in violation of the penal
3  code section 211, and that was in San Francisco; is that correct?"
4  Mustafaa answered, "yes."   Resp. Ex. J, Vol. 2 RT at 298.   Despite
5  the dismissal of the 1984 robbery as a prior conviction in a
6  previous case for insufficient evidence, in the molestation trial
7  Mustafaa admitted to the 1984 robbery conviction.   Mustafaa's
8  admission to the 1984 robbery conviction dispels any reasonable
9  doubt that he had been convicted of the robbery, and, therefore, he
10  was not denied due process.

11    E.   Prosecutorial Misconduct

12    Mustafaa argues that his due process rights were violated as a
13  result of improper arguments made by the prosecutor during her
14  closing argument.   He argues that in posing the question, "[B]y the
15  way where are these two girl friends, the two girlfriends he's
16  apparently had for the last 20 years? . . . Why not bring those
17  ladies in, if they really existed," RT at 488-89, the prosecutor
18  improperly implied that Mustafaa "had no former girlfriends to speak
19  to his character or that he had committed similar acts upon their
20  children."

21    Prosecutorial misconduct is cognizable in a federal petition
22  for habeas corpus when a prosecutor's misconduct renders a trial
23  "fundamentally unfair."   Darden v. Wainwright, 477 U.S. 168, 181
24  (1986).   A prosecutor may properly comment upon a defendant's
25  failure to present witnesses so long as it does not call attention
26  to the defendant's own failure to testify.   United States v.
27  Castillo, 866 F.2d 1071, 1083 (9th Cir. 1988); United States v.

28                                      44

1  <u>Bagley</u>, 772 F.2d 482, 494 (9th Cir. 1985) (prosecutor's comment on

2  failure to present witnesses improper if it is manifestly intended

3  to call attention to defendant's failure to testify, and is of such

4  a character that jury would naturally and necessarily take it to be

5  a comment on defendant's failure to testify); <u>see also</u> <u>United States</u>

6  <u>v. Lopez</u>, 803 F.2d 969, 973 (9th Cir. 1986) (prosecutor's reference

7  to lack of evidence showing that defendant tried to disassociate

8  himself from a witness whose credibility was attacked by defense was

9  not attack on defendant's failure to testify).

10     Because Mustafaa testified in his own defense, there was no

11 danger that the prosecutor's argument violated his right against

12 self-incrimination.   Therefore, the prosecutor's questions did not

13 render the trial fundamentally unfair.

14                         CONCLUSION

15     Mustafaa provides no evidence of disputed facts, the resolution

16 of which in his favor would result in habeas relief.  Thus, no

17 evidentiary hearing is required.  Based on the foregoing, the Court

18 DENIES Mustafaa's petition for a writ of habeas corpus on all of his

19 claims.

20

21 Dated: _____APR 2 2 2008_____

22                                    CLAUDIA WILKEN
                                     United States District Judge

23

24

25 Copies mailed as noted
   on the following page

26

27

28                         45

F I L E D    C O P Y

scc

United States District Court
for the
Northern District of California

* * CERTIFICATE OF SERVICE * *

Case Number:4:99-cv-03452

Mustafaa

vs

Newland

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Northern District of California.

That on _____(/-U-()_____ , I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office.

        Abdullah W. Mustafaa
        CSP-Solano II
        California State Prison-Solano
        E24447
        P.O. Box 4000
        Vacaville, CA  95696

        Glenn Pruden, Esq.
        CA State Attorney General's Office
        455 Golden Gate Ave
        Suite 11000
        San Francisco, CA  94102-7004

                                    Richard W. Wieking, Clerk

                              BY: _____
                                    Deputy Clerk